IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HOTEL EMPLOYEES & RESTAURANT | : | CIVIL ACTION |
| LOCAL NO. 274 HEALTH & WELFARE | : | NO. 10-1279 |
| FUND, et al. | : | |
| | : | |
| v. | : | |
| | : | |
| STADIUM HOTEL RESTAURANT | : | |
| GROUP, INC. T/A BENNY THE BUM | : | |
| RESTAURANT | : | |
| | : | |
| v. | : | |
| | : | |
| BRET LEVY | : | |

O'NEILL, J.                                                                                             MARCH 26, 2012

## MEMORANDUM

I have before me defendant/third-party plaintiff Stadium Hotel Restaurant Group's motion for summary judgment against third-party defendant Bret Levy and Levy's response. For the reasons that follow I will deny Stadium's motion.

## BACKGROUND

This litigation began when three funds of the Hotel Employees and Restaurant Employees Local No. 274 union filed suit against Stadium to recover unpaid contributions. The funds allege that Stadium operates a restaurant called Benny the Bum in a Holiday Inn hotel in Philadelphia. Dkt. No. 3 at ¶¶ 8 & 9. When Stadium leased the restaurant space, it became bound to a pre-existing collective bargaining agreement between Holiday Inn and Local 274. Id. at ¶ 9. Under the agreement, Stadium was required to make certain contributions to the funds. Id. ¶ 10. The funds allege that Stadium owes nearly $100,000 for unpaid contributions dating from January 2007 to February 2010. Id. at ¶¶ 18 & 20. The funds attach to their Amended Complaint their

auditor's letter to Benny the Bum stating that for the period of January 1, 2007 to December 31, 2008, the restaurant owes the funds approximately $55,000 for unpaid contributions.  See Dkt. No. 3-3.

Stadium filed an Answer denying that it owes the funds any unpaid contributions.  See Dkt. No. 8.  Additionally, Stadium filed a Third-Party Complaint against Levy alleging that it entered into a joint venture with Levy to operate the hotel restaurant.  Dkt. No. 12 at ¶ 5.  According to Stadium, its contract with Levy "was never reduced to a single written document," id. at ¶ 6, but it made Levy solely responsible for managing the restaurant's payroll.  Id. at ¶ 7.  Levy had the authority to issue payroll checks drawing upon Stadium's bank account.  Id. at ¶ 8.  Levy knew that Stadium was obliged under the collective bargaining agreement to make contributions to the funds and failed to ensure that the payments were made.  Id. at ¶¶ 12 & 13.  He gave Stadium "inaccurate accountings of the restaurant staff."  Id. at ¶ 11.  Stadium ended its joint venture with Levy in August 2009, but Levy continued to hold himself out as the restaurant's manager and he withheld from Stadium the restaurant's financial records.  Id. at ¶ 14.

Stadium asserts against Levy claims for breach of fiduciary duty, indemnification and contribution.  Id. at ¶¶ 16-24.  With respect to the claim for breach of fiduciary duty, Stadium alleges that it "has been exposed to potential legal liability, and incurred substantial damages, including legal fees."  Id. at ¶ 19.  Stadium seeks judgment against Levy "for all sums that may be adjudged against Stadium in favor of plaintiff Local 274, plus costs and attorney fees."  Stadium does not assert a claim for breach of contract.

Levy admits in his Answer that he entered into a joint venture with Stadium but denies that he was solely responsible for managing the restaurant's payroll.  Dkt. No. 14 at ¶¶ 5 & 7.

2

Additionally, Levy denies that he knew of Stadium's obligations under the collective bargaining agreement or that he was responsible for ensuring payment to the plaintiff funds. Id. ¶¶ 12 & 13.

After discovery, Stadium moved for summary judgment on all its claims against Levy. See Dkt. No. 24. Stadium asserts that "Levy failed to ensure that the Restaurant complied with" its obligation to pay contributions to the funds, Dkt. No. 24-1 at 6, but Stadium does not provide any evidence of non-payment. In addition, Stadium does not provide evidence establishing that Levy was responsible for making payments to the plaintiff funds. At his deposition, Levy described himself as the restaurant's "manager" and he admitted that he "helped oversee the restaurant," that he signed contracts and checks on behalf of the restaurant and that he was "like an owner with an interest in running the restaurant." Dkt. No. 24-2 at 10-12. But he never admitted responsibility for paying union contributions and he denied ever having seen the collective bargaining agreement. Id. at 13.

In opposing Stadium's motion, Levy does not deny that he owed Stadium a fiduciary duty. Levy asserts, however, that Stadium had control over the restaurant's bookkeeping. Dkt. No. 27 at 6. Additionally, he argues that he made the benefit payments owed. See Dkt. No. 27 at 8-12. Levy principally relies on two documents to support his position. One is a lease agreement for the restaurant space between landlord Trent Motel Associates, L.P. and tenants Stadium Hotel Restaurant Group, Benny the Bum and Stadium Hospitality Group. Ex. A to Dkt. No. 27. Levy signed the lease on behalf of Benny the Bum. Id. at 36. The lease includes a provision recognizing that existing restaurant workers are entitled to benefits pursuant to a "union

contract." Id. at 42. The provision grants "Tenant"[1] the option of paying these benefits directly to the employees or paying Trent $2,083.33 a month, in which case Trent becomes responsible for paying the employees. Id. "Tenant," however, is responsible for benefits payments for any new employees. Id.

The second document on which Levy relies is a collection of budget sheets, each of which is entitled "Restaurant/Banquet Reconciliation for the Leased Out Operation." See Ex. B to Dkt. No. 27. Each budget sheet includes a section entitled "Bills Generated to Leasee." Id. For most months between July 2006 to May 2008, this section includes line items entitled "Union Benefits" or "Monthly Union Benefits" that show bills of $2,0833.33. Id. Levy argues that these budget sheets show that he made all the payments he was obligated to make.

These budget sheets, however, show only that a "leasee," presumably Benny the Bum, was regularly billed for benefits for union employees. The budget sheets do not show that Levy or anyone else actually made the payments sought. Accordingly, on January 30, 2012, I ordered Levy to file an affidavit or other evidence, such as cancelled checks, showing that he paid the amounts for which he was billed. See Dkt. No. 29. I gave Levy until February 13, 2012 to file his evidence. Id. To this date, Levy has not responded to my Order. Accordingly, the record contains no evidence that Levy made any payments.

**STANDARD OF REVIEW**

The party moving for summary judgment bears the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[1] Even though three entities signed the lease as tenants, this provision of the lease refers only to the rights and responsibilities of "Tenant."

law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  If the movant sustains its burden, the nonmovant must set forth facts demonstrating the existence of a genuine dispute.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  A fact is "material" if it might affect the outcome of the case under governing law.  Id.

> To establish "that a fact cannot be or is genuinely disputed," a party must:
>
> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions.  Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989).  The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the movant.  Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted).

## DISCUSSION

I.   Breach of Fiduciary Duty

Stadium and Levy agree that they entered into a joint venture to operate their restaurant.

In Pennsylvania,[2] a joint venturer owes "obligations of loyalty, fairness, good faith and full disclosure toward his fellow co-adventurers." McRoberts v. Phelps, 138 A.2d 439, 445 (Pa. 1958). Therefore, Levy owed Stadium the duties of a fiduciary and vice versa. According to Stadium, Levy breached his fiduciary duties by failing to ensure that the restaurant paid required contributions to the plaintiff funds.

Stadium alleges in its Complaint, however, that Levy's duty to ensure payment to the plaintiff funds arises from the parties' unwritten joint venture agreement, not from Levy's status as a fiduciary. See Stadium Compl. at ¶ 7 ("Pursuant to the Joint Venture Agreement, Levy was solely responsible for overseeing the operation and financial management of the restaurant, which included the hiring of restaurant staff and managing the staff payroll.") & ¶ 13 ("Levy's responsibility for ensuring payment of the financial obligations of the restaurant included making the . . . required contributions to the Local 274, and he failed to do so."). Whatever duties Levy owed by virtue of the joint venture agreement are distinct from his duties as a fiduciary. See Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 105 (3d Cir. 2001) (interpreting Pennsylvania law and explaining that "the larger social policies embodied in the law of torts rather than the terms of the contract" impose the obligations underlying appellee's fiduciary duty claim) (internal quotation marks omitted). Levy's duties under the joint venture agreement are difficult to ascertain because the agreement was never reduced to writing. At his deposition, Levy never admitted responsibility for ensuring that the restaurant made payments to the plaintiff funds. But even if Levy were contractually obligated to ensure payment of contributions to the plaintiff funds and failed to do so, he would have breached a contractual obligation. It would not

---

[2]   The parties agree that Pennsylvania law governs Stadium's claims against Levy.

follow that his failure to meet this obligation would amount to a breach of his fiduciary duties.

To establish that Levy breached his fiduciary duties, Stadium must prove that Levy did not live up to his "obligations of loyalty, fairness, good faith and full disclosure." McRoberts, 138 A.2d at 445. The slim record before me contains no evidence that Levy failed to fulfill these fiduciary obligations. Summary judgment in favor of Stadium is therefore inappropriate.

Stadium's motion fails for an additional reason: there is no evidence of injury. Stadium has not yet been found liable to the plaintiff funds for any damages. Also, while legal costs incurred as the result of a breach of fiduciary duty are cognizable damages, Fidelity Bank v. Commonw. Marine & Gen. Assurance Co., 592 F. Supp 513, 529-30 (E.D. Pa. 1984), and Stadium alleges that it has incurred legal costs, Stadium has not submitted any evidence of its legal expenses to date. Accordingly, I will deny Stadium's motion for summary judgment on its claim for breach of fiduciary duty.

II.     Indemnification

Stadium also moves for summary judgment on its indemnification claim against Levy. The right of indemnity "is a right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable." Builders Supply Co. v. McCabe, 77 A.2d 368, 370 (Pa. 1951). "Under Pennsylvania law, actual payment, and not just a verdict or judgment, is required." McClure v. Deerland Corp., 585 A.2d 19, 23 (Pa. Super. Ct. 1991). Stadium has not paid anything to the plaintiff funds, nor does it yet have any legal obligation to do so. Its claim for indemnification is premature and I will therefore deny this part of Stadium's motion.

III.     Contribution

Finally, Stadium moves for summary judgment on its contribution claim.  "[T]he equitable obligation of contribution may be asserted where: (1) the parties combined to produce the plaintiff's injury; (2) the parties are each liable in tort to the plaintiff; and (3) a tortfeasor has discharged the common liability by paying more than his pro rata share."  Mattia v. Sears, Roebuck & Co., 531 A.2d 789, 791 (Pa. Super. Ct. 1987).  As is the case with its indemnification claim, Stadium's contribution claim is premature.  Stadium has not yet been deemed liable for any injury to plaintiff funds and it has not yet paid more than its pro rata share of damages.  I will therefore deny Stadium's motion for summary judgment on its claim for contribution.

An appropriate Order follows.